# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| WENDY LEA WAGENER, | CASE NO. 07-CV-1584-JLS (BLM) |
|---|---|
| Petitioner, | **ORDER: (1) ADOPTING THE REPORT AND RECOMMENDATION AND (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| RON KENAN, WARDEN, | |
| Respondent. | |

Presently before the Court is Petitioner Wendy Lea Wagener's ("Petitioner") petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254. Petitioner challenges her convictions for robbery, assault with a deadly weapon, possession of methamphetamine for sale, possession of methamphetamine, and unlawful possession of a hypodermic syringe.

On April 15, 2008, United States Magistrate Judge Barbara Lynn Major issued a Report and Recommendation ("Report") advising this Court to deny the Petition. [Doc. No. 11.] On May 27, 2008, Petitioner timely objected to the Report. [Doc. No. 13.] For the following reasons, the Court **ADOPTS** the Report and **DENIES** the Petition.

## BACKGROUND

On January 21, 2003, in San Diego Superior Court, a jury unanimously convicted Petitioner of robbery while using a deadly and dangerous weapon, assault with a deadly weapon,

possession of methamphetamine for sale, possession of methamphetamine, and unauthorized possession of a hypodermic syringe. [Lodgment 3, vol. 4 at 739-41.] On September 10, 2003, the trial judge denied Petitioner's motion for a new trial. [Lodgment 3, vol. 5 at 933-38.] During the hearing on Petitioner's motion for a new trial (the "Hearing"), the trial judge found Petitioner's prior convictions to be true, "numerous," and "increasing in seriousness." [Id. at 949.] As a result of these findings, the trial judge imposed the upper term sentence for Petitioner's robbery, assault with a deadly weapon, and possession of methamphetamine convictions. [Memo. ISO Pet. at 8-11.]

On October 22, 2004, the California Court of Appeal affirmed Petitioner's convictions and sentence. [Lodgment 9.] Petitioner then filed a petition for review with the California Supreme Court. [Lodgment 10.] On January 12, 2005, the California Supreme Court accepted the petition for review. On September 7, 2005, the court dismissed the petition for review. [Lodgment 12.]

On February 27, 2006, Petitioner filed a habeas petition in San Diego Superior Court challenging her convictions on four grounds. [Lodgment 13.] On April 18, 2006, the Superior Court denied the habeas petition in a reasoned opinion. [Lodgment 14.]

Subsequently, Petitioner filed a habeas petition with the California Court of Appeal raising the same four grounds for relief. [Lodgment 15.] On September 14, 2006, the Court of Appeal denied the petition in a reasoned opinion. [Lodgment 16.]

On November 15, 2006, Petitioner filed a habeas petition with the California Supreme Court raising the same four grounds for relief. [Lodgment 17.] On June 13, 2007, the California Supreme Court summarily denied the petition without citation to authority. [Lodgment 18.]

On August 9, 2007, Petitioner filed the instant Petition in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 2254. [Doc. No. 1.] The Petitioner raised the following five claims as to why her incarceration violated the Constitution or federal law: (1) the judge imposed an upper term sentence based on aggravating factors found by the judge, not by a jury beyond a reasonable doubt; (2) Petitioner's counsel provided ineffective assistance; (3) the trial court erroneously admitted highly prejudicial hearsay declarations into evidence; (4) the trial court refused to define preponderance of the evidence for the jury; and (5)

1  the Petitioner was shackled during trial for no reason.  On October 22, 2007, Respondent filed an
2  answer to the Petition. [Doc. No. 7.]  On December 17, 2007, Petitioner filed a timely traverse.
3  [Doc. Nos. 9 & 10.]  On April 15, 2008, United States Magistrate Judge Barbara Lynn Major
4  issued the Report advising this Court to deny the Petition. [Doc. No. 11.]  On May 27, 2008,
5  Petitioner filed her Objection to the Report ("Objection"). [Doc. No. 13.]  In the Objection,
6  Petitioner raised the same five grounds for relief contained in the original Petition. [Id.]

## LEGAL STANDARD

Rule 72(b) of the Federal Rules of Civil Procedure and United States Code Section 636(b)(1) set forth the duties of the district court in connection with review of a magistrate judge's report and recommendation. The district court must review de novo the portions of the report to which respondent objects and may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. 636(b)(1)(C); see also United States v. Remisng, 874 F.2d 614, 617 (9th Cir. 1989).  The Court may grant a petitioner's Section 2254 petition, only if the Court determines that the final California state court that reviewed the petition on the merits decided in a manner that was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d); Williams v. Taylor, 529 U.S. 362, 403, 412-13 (2000).

## ANALYSIS

**I.   The Upper Term Sentence Did Not Violate Petitioner's Federal Rights**

Petitioner argues that the trial judge violated her Sixth Amendment right to a jury trial by imposing the upper term sentence based on aggravating factors found by the judge, not by a jury beyond a reasonable doubt. [Memo. ISO Pet. at 8-11.]  The Court disagrees.

The United States Supreme Court has stated that "other than the fact of a prior conviction, any fact that increases the penalty beyond the prescribed statutory maximum must be submitted to

1  a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490
2  (2000); Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998) (stating that a judge may
3  use the defendant's prior convictions as an aggravating factor to justify imposing an upper term
4  sentence); People v. Black, 41 Cal. 4th 799, 815 (Cal. 2007) ("Black II") (holding that the
5  presence of one aggravating circumstance renders it lawful for the trial court to impose an upper
6  term sentence). The "'statutory maximum' for Apprendi purposes is the maximum sentence a
7  judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the
8  defendant." Blakely v. Washington, 542 U.S. 296, 303 (2004) (citations omitted, emphasis in
9  original). Recently, in Cunningham v. California, __ U.S. __, 127 S.Ct. 856, 868 (2007), the
10 Supreme Court stated that the "middle term prescribed in California's [determinate sentencing]
11 statutes, not the upper term, is the relevant statutory maximum." Cunningham did not announce a
12 new rule of criminal procedure and, therefore, applies retroactively to federal habeas cases. Butler
13 v. Curry, 528 F.3d 624, 634, 639 (9th Cir. 2008).

14 In the present case, Petitioner's upper term sentence did not violate the Sixth Amendment
15 because the trial judge relied on Petitioner's prior convictions as aggravating factors. Specifically,
16 the trial judge relied on Petitioner's prior convictions of conspiracy to commit robbery, possession
17 of methamphetamine, battery, and burglary to impose the upper term sentence. [Lodgment 3, vol.
18 5 at 945-47.] The trial judge explained that he imposed the upper term sentence on three out of the
19 seven convictions because he found the prior convictions to be "numerous" and "increasing in
20 seriousness." [Id. at 949-50.] As a result, the Court finds that the trial judge lawfully imposed an
21 upper term sentence. Accordingly, the Court **DENIES** Petitioner's first claim for relief.

22

23 **II.    Petitioner's Counsel Did Not Provide Ineffective Assistance**

24 Petitioner raised six reasons as to why her counsel provided ineffective assistance. The
25 Court finds each reason unpersuasive.

26 To establish an ineffective assistance of counsel claim: (1) the petitioner must show that
27 "counsel's representation fell below an objective standard of reasonableness," and (2) the
28 petitioner must show that counsel's deficient performance was prejudicial, such that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984).  The underlying question posited by an ineffectiveness claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied upon as having produced a just result."  Id. at 686.  "In assessing the probability of a different outcome, a court must consider the totality of the evidence before the judge or jury."  Young v. Runnels, 435 F.3d 1038, 1043 (9th Cir. 2006) (internal quotations and citations omitted).

### A. Counsel's Alleged Failure to Advise Petitioner of a Proper Maximum Sentence

Petitioner argues that her trial counsel failed to advise her of the correct maximum prison sentence she faced if convicted at trial.  Petitioner claims that the trial counsel told her she faced a maximum sentence of 10 years in prison if convicted at trial, rather than the 20 years she actually faced. [Memo. ISO Pet. at 12-13.]  Petitioner contends that because of this misinformation she proceeded to trial instead of accepting the government's offer to plead guilty in return for an eight year sentence.  [Id. at 19.]  The Court rejects this claim.

This ineffective assistance claim fails both prongs under Strickland.  First, during the Hearing, Petitioner's trial counsel testified that he told Petitioner, prior to trial and with the prosecutor as a witness, that she faced up to 20 years in prison. [Lodgment 3, vol. 5 at 856-57.] At the Hearing, the trial judge found Petitioner's testimony "not particularly credible."  [Id.] Petitioner provides no evidence to counter the trial judge's finding.  Thus, Petitioner has not shown that counsel's performance was objectively unreasonable.

Second, Petitioner has not established that there is a reasonable probability that the result of the proceedings would have been different.  The plea offer was contingent on Petitioner pleading guilty to all of the charges. [Lodgment 3, vol. 5 at 851-52.]  However, at the Hearing, Petitioner admitted that she would not have plead guilty to all of the charges when she stated "No, I would not have plead guilty, no contest, yes, but not that I had robbed and cut her hair." [Id. at 807.]  Therefore, there is not a reasonable probability that Petitioner would have accepted the plea offer even if it offered a lower sentence.  Accordingly, Petitioner's first ineffective assistance of

counsel claim fails.

### B. Counsel's Alleged Drug Use

Next, Petitioner argues that her trial counsel provided ineffective assistance because he used drugs both when he visited her at the Las Colinas Detention Facility and during trial. [Memo. ISO Pet. at 13-14, 28-30.] The Strickland standard also applies to counsel's alleged drug use. Bonin v. Calderon, 59 F.3d 815, 838 (9th Cir. 1995). The Ninth Circuit has found that using drugs is not relevant in and of itself to an ineffective assistance claim. Id. (citing Berry v King, 765 F.2d 451, 454 (5th Cir. 1985)). The relevant inquiry is whether counsel's performance was deficient and caused prejudice. Id.

Here, the trial court found "no credible evidence . . . that counsel was under the influence of a controlled substance" and Petitioner has not provided the Court any evidence to contradict that finding. [See Lodgment 16 at 2.] In addition, Petitioner has not clearly shown how the alleged drug use caused prejudice. Therefore, the Court rejects Petitioner's second claim for ineffective assistance.

### C. Testimony Regarding Petitioner's Criminal Record

Next, Petitioner argues that counsel was ineffective because he elicited testimony about her criminal record during his direct examination of Detective Verduzco. [Memo. ISO Pet. at 14-16, 21-23.] The Court disagrees.

Counsel's tactical decisions receive "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Trial counsel's tactical decisions deserve deference when counsel makes informed decisions based upon an investigation and when those decisions appear reasonable under the circumstances. Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Here, the Court is not persuaded that trial counsel acted unreasonably when he elicited testimony about Petitioner's criminal record. Counsel called Detective Verduzco as a witness to testify that he knew about Petitioner's drug history in order to corroborate the argument that she

1  used drugs and did not sell them. [Lodgment 3, vol. 5 at 868.] Counsel also used Detective
2  Verduzco's testimony to establish that he was biased against Petitioner because he knew about her
3  prior convictions. [Id. at 904-05, 936.] During the Hearing, the deputy district attorney
4  prosecuting the case regarded this strategy as a "bright spot" for Petitioner's counsel. [Id. at 924-
5  25.] Thus, the Court finds that these strategic decisions were reasonable under the circumstances.
6
7       **D.**     **Counsel's Alleged Failure to Investigate**
8       Petitioner argues that counsel performed deficiently because he failed to investigate
9  Petitioner's prior relationship with the victim. The Petitioner and the victim were romantically
10 involved until the Petitioner ended the relationship eight months prior to the alleged attack.
11 Petitioner believes that the victim had a motive to set her up because she ended the relationship.
12 Therefore, Petitioner claims that counsel's failure to investigate the relationship deprived her of a
13 potentially meritorious defense. [Memo. ISO Pet. at 16, 25-26.] However, the Court disagrees.
14      An attorney satisfies Strickland when he makes a reasonable decision that a particular
15 investigation is unnecessary. Strickland, 466 U.S. at 690-91. Even assuming that Petitioner
16 informed counsel about this prior relationship, he was not obligated to embark on a seemingly
17 unnecessary investigation. Counsel found that no witnesses would testify or present evidence
18 about the relationship. [Lodgment 3, vol. 5 at 870; Lodgment 3, vol. 3 at 490-96.] Moreover,
19 counsel decided not to introduce this evidence for tactical reasons because he did not want to
20 confuse the jury. [Lodgment 3, vol. 5 at 870.] Last, Petitioner fails to establish any specific
21 prejudice, other than alluding to the loss of "a potentially meritorious defense." Therefore, this
22 ineffective assistance claim fails.
23
24      **E.**     **Counsel's Alleged Failure to Call an Expert Witness**
25      Petitioner argues that counsel's failure to call Charles Wilcox as an expert witness to rebut
26 the prosecution's drug expert testimony amounts to ineffective assistance. [Memo. ISO Pet. at 16-
27 18, 27-28.] The Court rejects this claim.
28      As with counsel's other tactical decisions, the decision not to call an expert witness must

1  be within the wide range of reasonable professional judgments.  A prejudice claim stemming from
2  counsel's failure to call an expert witness must be supported by evidence sufficient to create "a
3  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
4  would have been different."  Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990) (citation omitted).
5  For example, in Raley v. Ylst, 470 F.3d 792, 801 (9th Cir. 2006), the Ninth Circuit found that
6  there was no ineffective assistance when a trial counsel chose not to call experts whose reports
7  were at best equivocal and possibly damaging to defendant's case.  In that case, the experts found
8  the defendant to be "callous," "dangerous," and a "sexual psychopath."  Id.

In the present case, trial counsel had reasonable strategic reasons not to call Mr. Wilcox as an expert witness.  First, both defense counsel and the prosecution agreed that Mr. Wilcox's qualifications would have posed problems on cross-examination because he based his expert opinion on only two half-day seminar classes.  [Lodgment 3, vol. 3 at 898, 926, 430.]  Second, Mr. Wilcox could only testify for a limited purpose.  Specifically, the trial judge concluded that he could offer testimony about the amount of drugs a heavy user would use in a single day, but not whether Petitioner possessed the drugs for sale or personal use.  [See Report at 36-37.]  Third, Mr. Wilcox expressed doubt as to whether Petitioner possessed the drugs for personal use and not for sale.  [Lodgment 3, vol. 5 at 860.]  Thus, as in Raley, Petitioner's counsel acted reasonably by deciding not to call this expert because he could have elicited damaging testimony.[1]  In addition, Petitioner has failed to demonstrate prejudice.  Accordingly, the Court rejects this ineffective assistance of counsel claim.

**F.     Counsel's Admission of Petitioner's Guilt to Assault**

Petitioner argues that counsel erred during his closing argument by admitting, without her approval, that she was guilty of assault.  [Memo. ISO Pet. at 26-27.]  The Court rejects this claim.

Generally, attorneys are required to consult with their clients regarding critical decisions, including questions of overarching defense strategy.  See Strickland, 466 U.S. at 688.  "That

---

[1] Petitioner's counsel did not obtain another expert because he concluded that other experts would reach the same conclusion and not assist Petitioner's case.  [Id. at 864.]

1  obligation, however, does not require counsel to obtain the defendant's consent to every tactical
2  decision." Florida v. Nixon, 543 U.S. 175, 187 (2004) (internal quotations and citations omitted).
3  Other than the decision whether to plead guilty, waive a jury trial, testify, or take an appeal, an
4  attorney has full authority to manage the conduct of trial without obtaining his client's approval.
5  Id.[2]

6        Here, even if counsel did not obtain Petitioner's consent, his strategic decision was
7  reasonable. Id. at 188. At the Hearing, counsel explained that he hoped admitting Petitioner's
8  guilt to the assault charge would result in a misdemeanor battery conviction instead of a conviction
9  for assault with a deadly weapon. [Lodgment 3, vol. 5 at 854.] As Magistrate Judge Major found,
10 counsel's choice to concede Petitioner's guilt to receive a lesser charge was a reasonable strategic
11 decision. [See Report at 41.] Thus, in sum, the Court denies each of Petitioner's ineffective
12 assistance of counsel claims.

14 **III.  Admission of Hearsay Declarations**

15       Petitioner argues that the trial court improperly admitted highly prejudicial hearsay
16 declarations into evidence in violation of California Evidence Code § 1223 and the United States
17 Supreme Court's decision in Crawford v. Washington.[3] [Memo. ISO Pet. at 30-31.] Petitioner
18 also contends that, other than the hearsay statements, no additional evidence existed to establish a
19 conspiracy. [Id. at 35.] Respondent argues that Petitioner fails to state a federal claim that is
20 cognizable on habeas review. [Resp.'s Memo. at 34.] Alternatively, Respondent contends that the
21 error was harmless even if Petitioner does state a federal claim. [Id.] For the following reasons,
22 the Court agrees with Respondent.

---

[2] An attorney's concession of guilt during closing argument is not equivalent to a guilty plea, which may only be entered with the defendant's consent. Nixon, 543 U.S. at 188.

[3] The Supreme Court held that "testimonial" out-of-court statements should be excluded as inadmissible hearsay unless defendants have had an opportunity to cross-examine the witnesses who made the statements. Crawford v. Washington, 541 U.S. 36, 50 (2004).

### A.  California State Evidence Code

The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Habeas petitioners must allege detainment "in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners must cite "provisions of the federal Constitution or . . . either federal or state case law that engages in a federal constitutional analysis." Fields v. Waddington, 401 F.3d 1018, 1021 (9th Cir. 2005).

In the present case, Petitioner stated that her "federal rights were violated," but she alleged violations of the California state evidence code. [Memo. ISO Pet. at 30-31.] In her Objection, Petitioner merely claimed "that there are instances where a state court's evidentiary rulings present a question of federal constitutional law[.]" [Pet.'s Obj. at 6.] However, Petitioner failed to cite any specific authority supporting this claim. Therefore, the Court finds that these vague references to federal rights are insufficient to allege a cognizable federal violation.

### B.  Crawford v. Washington

Additionally, Petitioner argues that admitting the hearsay statements violated the Supreme Court's decision in Crawford. [Memo. ISO Pet. at 34 n.8.] The Court disagrees.

A Crawford error is subject to harmless error review. United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004). The harmless error analysis dictates that an error is harmless if the court can say with fair assurance that it did not have "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Arnold v. Runnels, 421 F.3d 859, 867 (9th Cir. 2005).

As Magistrate Judge Major found, the admitted hearsay statements did not have a substantial and injurious effect in determining the jury's verdict. Even if the hearsay testimony was excluded, the jury still had sufficient independent evidence to convict Petitioner. [See Report at 47; Lodgment 3, vol. 3 at 395, 438.] Accordingly, the Court denies Petitioner's third ground for relief.

### IV. The Trial Court's Failure to Define Preponderance of the Evidence for the Jury Did Not Violate Petitioner's Federal Rights

Petitioner argues that the trial court's failure to define preponderance of the evidence for the jury was not merely harmless error. She argues that the error was not harmless because it is unclear which standard the jury applied when they found it appropriate to consider highly incriminating hearsay statements. [Memo. ISO Pet. at 41.] The Court disagrees.

As stated above, Petitioner must allege that she is in custody "in violation of the Constitution or the laws or treaties of the United States" for habeas relief. See Estelle, 502 U.S. at 67-68; 28 U.S.C. § 2254 (a). If a petitioner bases a habeas claim on an improper jury instruction, he or she must show that the instruction is more than "undesirable, erroneous, or even 'universally condemned.'" Cupp v. Naughten, 414 U.S. 141, 146 (1973). In addition, a petitioner must establish that the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 147. "This standard for instructional error [also] applies to ambiguous or omitted instructions." Murtinshaw v. Woodford, 255 F.3d 926, 971 (9th Cir. 2001). "An appraisal of the significance of an error in the instructions to the jury requires a comparison of the instructions which were actually given with those that should have been given." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

In order for an omitted instruction to violate a petitioner's due process rights, it must have resulted in actual prejudice. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Actual prejudice is established if the erroneous instruction "had a substantial and injurious effect or influence in determining the jury's verdict." Id.; Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (finding that an erroneous reasonable-doubt instruction denied the accused of the right to a jury verdict of guilt beyond a reasonable doubt because it impermissibly lowered the government's burden).

Here, Petitioner argues that the trial court erred by failing to define preponderance of the evidence. Instead, the court instructed the jury to consider the hearsay statements if they found beyond a reasonable doubt that Petitioner conspired to dissuade witnesses. [Lodgment 3, vol. 4 at 599-600.] However, unlike Sullivan, this "ailing" instruction provided Petitioner more due process protection by increasing the government's burden of proof in proving all elements.

1    Further, even though the preponderance of the evidence instruction was omitted, the error
2 did not prejudice Petitioner. The trial court instructed the jury to apply the reasonable doubt
3 standard when finding true any facts or circumstances. As a result, the jury was not "left free" to
4 apply their own standard. Compared to the preponderance of evidence instruction that should
5 have been given, Petitioner has not established that the trial court's instruction "had a substantial
6 and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.
7 Therefore, even assuming a constitutional violation, the error was harmless.

8

9  **V.    Shackling Petitioner During Trial Did Not Violate her Due Process Rights**
10    Petitioner argues that, although no evidence established that the jury saw the shackles,
11 shackling her during trial without justification violated her constitutional due process rights.
12 [Memo. ISO Pet. at 41-42.] The Court disagrees.
13    Due Process "forbids the use of visible shackles during the penalty phase, as it forbids their
14 use during the guilt phase, unless that use is 'justified by an essential state interest' – such as the
15 interest in courtroom security – specific to the defendant on trial." Deck v. Missouri, 544 U.S.
16 622, 624 (2005) (internal citation omitted). To prevail on this claim a petitioner must establish:
17 (1) the defendant was physically restrained in the presence of the jury; (2) the jury saw the
18 shackling; (3) state interests did not justify the physical restraint; and (4) the defendant suffered
19 prejudice as a result. Ghent v. Woodford, 279 F.3d 1121, 1132 (9th Cir. 2002). The risk of
20 prejudice is increased if the defendant is charged with a violent crime because shackling
21 "essentially brand[s] [them] as having a violent nature." Larson v. Palmateer, 515 F.3d 1057,
22 1064 (9th Cir. 2008) (internal citations and quotations omitted). "Concerns about prejudice may
23 be mitigated, however, if the state's evidence against the defendant was 'overwhelming.'" Id.
24 (citation omitted).
25    In the case at hand, Petitioner's claim fails for two reasons. First, there is no evidence in
26 the record showing that any juror actually saw Petitioner's leg shackles. See Bernal v. Tilton,
27 2007 WL 1972097, *1-3 (S.D. Cal. June 20, 2007) (denying similar habeas claim because the
28 record contained no evidence that the jury saw defendant shackled in the courtroom). Second,
Petitioner has not established any prejudice from the shackling. Therefore, the Court rejects

1 | Petitioner's final ground for relief.

## **CONCLUSION**

For the foregoing reasons, the Court: (1) **ADOPTS** the Report and Recommendation, and (2) **DENIES** Petitioner's habeas corpus petition.

IT IS SO ORDERED.

DATED: August 22, 2008

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge